**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| ROBERT SCOT JAMES, and<br>CORE 2000, LLC | ) | |
| *Plaintiffs/Judgment Creditors*, | ) | CIVIL ACTION FILE |
| v. | ) | NO. 1:23-mi-108-VMC-JKL |
| HONORS HOLDINGS, LLC, | ) | |
| *Defendant/Judgment Debtor*. | ) | |

**HONORS HOLDINGS, LLC'S RESPONSE AND OBJECTION TO JUDGMENT CREDITORS' APPLICATION FOR ENTRY OF CHARGING ORDER**

**COMES NOW**, Honors Holdings, LLC ("Honors Holdings" or "Judgment Debtor") in the above-styled miscellaneous case and files this Response and Objection (the "Response") to Robert Scot James and Core 2000, LLC's ("Judgment Creditors") Application For Charging Order [Doc. No. 10] (the "Application") and shows the Court as follows:

## INTRODUCTION

Judgment Creditors seek through this Application to divert all payments and distributions that Honors Holdings is entitled to receive by virtue of its membership interests in 138 non-party, non-debtor limited liability companies, including 96 foreign limited liability companies formed in other state jurisdictions. As Judgment Creditors are well aware, however, substantially all of the assets of Honors Holdings,

including its interests in the Honors Entities, are subject to priority liens securing approximately $95 million in outstanding debt. [1] Further, Honors Holdings' senior lenders have declared an Event of Default under the credit agreement governing that debt, with one such consequence being that all of Honors Holdings' rights to receive distributions and payments from the Honors Entities have automatically ceased and, to the extent any such distributions or payments are received, Honors Holdings must hold them in trust for its senior secured lenders. Honors Holdings thus has no currently vested "rights" that can be assigned to Judgment Creditors through the issuance of a charging order. The Application should be denied on this basis alone.

The Application should also be denied in its entirety to the extent it seeks a charging order as to Honors Holdings' interests in foreign limited liability companies formed under the laws of a dozen other states. O.C.G.A. § 14-11-504(a) only authorizes a court of competent jurisdiction to "charge the limited liability company interest" of Honors Holdings with the payment of the unsatisfied

---

[1] Oddly, Movants do not allege in their Motion for a Charging Order how this Court has subject matter jurisdiction over the current matter. Presumably, Movants are relying on diversity jurisdiction. Thus, they must show that at the time of the filing there was complete diversity. *MacGinnitie v. Hobbs Grp., LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005). The citizenship of a limited liability company is determined by the citizenship of each member of the limited liability company, not where the entity was organized. *Beasley Forest Products, Inc. v. Northern Clearing, Inc.*, 515 F. Supp. 3d 1367, 1371 (2021). Thus, it is unclear if Movants have met this jurisdictional threshold.

Judgment. The Georgia Limited Liability Company Act (the "LLC Act") expressly defines the term "limited liability company" to mean an LLC formed under the Georgia LLC Act, and separately defines "foreign limited liability company" as an LLC formed under the laws of a different jurisdiction. O.C.G.A. § 14-11-101(9), (12). As such, Judgment Creditors can only obtain a charging order under O.C.G.A. § 14-11-504 against interests in Georgia LLCs.

Finally, to the extent Judgment Creditors can obtain a charging order against the Georgia LLCs, the Application should nonetheless be denied to the extent it seeks relief far beyond what is authorized by O.C.G.A. § 14-11-504. In particular, the Application calls for an accounting of assets, the production and filing with this court of various books and records, and the filing of periodic quarterly reports concerning distributions owed to Honors Holdings. None of this relief is authorized under O.C.G.A. § 14-11-504(a) and Judgment Creditors offer no other authority entitling them to it. For these reasons and those set forth in further detail below, the Application should be denied.

## STATEMENT OF FACTS

Honors Holdings is a holding company that owns membership interests in limited liability companies (LLCs) that own and operate approximately 140 Orangetheory® Fitness ("OTF") studios across the country. The Application defines the LLCs that own and operate these OTF studios as the "Honors Entities."

Honors Holdings itself does not directly own any OTF fitness studios, but instead owns membership interests in LLCs that are ultimately managed by the individual OTF studios. (Application, Ex. C ("James Aff.") ¶ 8). In addition to 42 studios and LLCs located in Georgia, the individual OTF studios and the LLCs that they manage are located in approximately twelve states and the District of Columbia. (Application, Ex. A).

### A. WhiteHorse Obtains First Priority Security Interest in Substantially All of the Assets of Honors Holdings and the Honors Entities.

On September 6, 2019, Honors Holdings entered into a Credit Agreement (the "Credit Agreement") with certain Credit Parties, Lenders, and WhiteHorse Capital Management LLC ("WhiteHorse"), in its capacity as Agent for the Lenders,[2] pursuant to which WhiteHorse provided Honors Holdings with a revolving credit facility and term loan to fund the acquisition of other entities that owned and operated OTF studios (among other purposes). (Ex. A, Credit Agr.).

In connection with the Credit Agreement, Honors Holdings executed a Security Agreement that granted WhiteHorse a security interest in and lien upon substantially all of its property and assets (Ex. A, Credit Agr. § 4.21; Ex. B, Security Agr. § 1(b)). WhiteHorse also required that each Honors Entity, subject to certain exceptions for subsidiaries with immaterial assets, guarantee the repayment of all

2 Capitalized terms not defined in this Response have the meanings ascribed to them in the Credit Agreement.

Obligations under the Credit Agreement and grant to WhiteHorse a first priority security interest in its assets. (Ex. A, Credit Agr. § 6.16).

On September 20, 2019, WhiteHorse filed and recorded a UCC Financing Statement that identified as secured collateral all of the assets of Honors Holdings "whether now owned or hereafter acquired or arising and wherever located." (Ex. C, UCC Financing Statement dated Sept. 20, 2019). On information and belief, WhiteHorse has also recorded similar UCC Financing Statements securing priority interests in the property and assets of many of the Honors Entities themselves.

**B. Judgment Creditors Obtain the Judgment Against Honors Holdings.**

On May 16, 2022, Judgment Creditors and Honors Holdings entered into an Asset Purchase Agreement (the "APA") that contemplated Honors Holdings purchasing several OTF studios and related assets from the Judgment Creditors and other sellers. Honors Holdings ultimately defaulted under the APA and failed to make payments to Judgment Creditors totaling approximately $5.5 million. (Application, Ex. B at 2; James Aff. ¶¶ 5-7).

On May 31, 2023, nearly three years after WhiteHorse perfected its security interest in substantially all of the assets of Honors Holdings, Plaintiffs filed a complaint (the "Complaint") against Honors Holdings in the United States District Court for the District of Delaware, in a case styled *Robert Scot James and Core2000 LLC v. Honors Holdings, LLC*, Case No. 1:23-cv-00591-GBW (D. Del.). The

Complaint alleged that Honors Holdings had breached the APA and owed Plaintiffs $5.5 million in damages, plus interest, as a result. On September 29, 2023, the Court entered a Stipulated Final Judgment in the amount of $5,947,533, plus $85,000 in attorneys' fees (the "Judgment"). (Application, Ex. B). Judgment Creditors registered the Judgment in this Court on October 26, 2023. [Doc. No. 1].

**C. Georgia State Court Rejects Judgment Creditors' Effort to Garnish Honors Holdings' Bank Account.**

On November 14, 2023, Judgment Creditors filed a garnishment proceeding against JPMorgan Chase Bank ("Chase"), as garnishee, in the Georgia State Court of Cobb County, in which they sought the contents of Honors Holdings' Chase bank account. (Ex. D, Garnishment Order at 1). Chase paid approximately $3.7 million into the registry of the Georgia state court and filed an amended answer notifying the court that Honors Holdings' bank account was subject to a Blocked Account Control Agreement between Honors Holdings, WhiteHorse, and Chase. (*Id.* at 1-2).

On November 29, 2023, after learning of the garnishment proceeding, WhiteHorse sent Honors Holdings a Notice of Event of Default (the "Default Notice") that declared Honors Holdings to be in default under the Credit Agreement and related documents, and also exercised its right under the Blocked Account Control Agreement to provide Chase with a Shifting Control Notice. The Default Notice entitled WhiteHorse to take immediate possession of all of the collateral securing the Obligations under the Credit Agreement, including all of the deposit

accounts of Honors Holdings and its Subsidiaries, to satisfy the outstanding Obligations. *See* O.C.G.A. § 11-9-607(a).

At the time of the garnishment proceeding, Honors Holdings owed WhiteHorse approximately $99 million under the Credit Agreement. Honors Holdings and WhiteHorse both filed claims in the garnishment proceeding premised on WhiteHorse having a claim to Honors Holdings' assets that was higher priority than the Judgment Creditors' claim. (Ex. D at 2). After trial on these claims, the Georgia state court found that WhiteHorse's claim to the garnished funds was "superior to and takes priority over plaintiffs' judgment" because WhiteHorse's security interest preceded entry of the Judgment. (*Id.*) The court ordered that the garnished funds be immediately released to WhiteHorse. (*Id.* at 3).

**D. WhiteHorse Declares an Additional Event of Default Under the Credit Agreement.**

On April 22, 2024, WhiteHorse as Agent under the Credit Agreement declared that an additional Event of Default had occurred and was continuing pursuant to Section 2.3 of the Credit Agreement (Ex. E, Notice of Default dated April 22, 2024). As a result of this Event of Default, all of Honors Holdings' rights to "receive the dividends, principal and interest payments and other distributions which it would otherwise be authorized to receive and retain," including any distributions or payments by virtue of its pledged membership interests in the Honors Entities, "automatically cease[d]" and became vested in WhiteHorse. (Ex. B, Security Agr.

§ 6(b)(i)). WhiteHorse also exercised its right to appoint an Independent Manager of Honors Holdings, who removed all previously appointed officers of, and took full control over the property and accounts of, Honors Holdings and its direct and indirect Subsidiaries.

**E. Judgment Creditors Seek to Circumvent the Georgia State Court's Garnishment Order and WhiteHorse's Perfected Security Interest by Filing the Charging Order Application.**

On July 19, 2024, Plaintiff filed this Application [Doc. No. 10]. The Application purports to request six separate forms of relief: (1) a charging order against the membership interests of Honors Holdings in the Honors Entities; (2) a statement under oath from Honors Holdings accounting for its interests in the Honors Entities; (3) a court-ordered requirement that Honors Holdings file quarterly written reports accounting for its interests in the Honors Entities; (4) copies of organizational documents that Honors Holdings has already furnished to Plaintiff; (5) authorization from the court to provide written notice of a so-ordered charging order to the Honors Entities; and (6) the entry of unlimited and unnamed "other orders necessary" to provide Judgment Creditors with relief.

The Proposed Order attached to the Application as Exhibit D also purports to order the Honors Entities¸ who are not judgment debtors and are not parties to this proceeding, to deliver distributions and other payments owing to Honors Holdings directly to the Judgment Creditors, and to enjoin and restrain all other "persons in

active convert [sic] or participation with Judgment Debtor . . . from alienating, encumbering, assigning, transferring, pledging, hypothecating, otherwise impairing in any manner, or in any manner failing to hold and protect Judgment Debtor's membership interest, however denominated, in the Honors Entities, until such time as the Judgment has been satisfied in full." (Application, Ex. D at 2).

**ARGUMENT AND CITATION TO AUTHORITY**

The Application seeks a charging order under O.C.G.A. § 14-11-504(a) and an injunction in furtherance of that charging order. O.C.G.A. § 14-11-504(a) provides, in pertinent part:

> On application to a court of competent jurisdiction by any judgment creditor of a member or of any assignee of a member, the court may charge the limited liability company interest of the member or such assignee with payment of the unsatisfied amount of the judgment with interest. To the extent so charged, the judgment creditor has only the rights of an assignee of the limited liability company interest. This chapter does not deprive any member of the benefit of any exemption laws applicable to his or her limited liability company interest.

O.C.G.A. § 14-11-504. Judgment Creditors' request for relief under this statutory provision should be denied for at least three reasons.

*First*, the Application should be denied because Honors Holdings has no present "right" to distributions or payments as a result of its interests in the Honors Entities. Judgment Creditors are seeking an order requiring that the Honors Entities deliver to Judgment Creditors "all future distributions, draws, returns of equity, loan repayments and all other payment obligations owed to Judgment Debtor ***by virtue of***

***its interest in the Honors Entities***." (Application, Ex. D at 2 (emphasis added)). As explained above, WhiteHorse has a perfected, priority security interest in all of the assets of Honors Holdings, including its membership interests in the Honors Entities. (Ex. A, Credit Agr. § 4.21; Ex. B, Security Agr. § 1(b); Ex. C, UCC Financing Statement dated Sept. 20, 2019; Ex. D, Garnishment Order at 2-3).

WhiteHorse also has a priority security interest in the proceeds that Honors Holdings may be entitled to receive by virtue of its membership interests in the Honors Entities, and a priority security interest in substantially all of the assets of the Honors Entities themselves. *See* O.C.G.A. § 11-9-203(f) ("The attachment of a security interest in collateral gives the secured party the rights to proceeds provided by Code Section 11-9-315 and is also attachment of a security interest in a supporting obligation for the collateral."); § 11-9-315(a)(2) ("A security interest attaches to any identifiable proceeds of collateral."); § 11-9-315(c) ("A security interest in proceeds is a perfected security interest if the security interest in the original collateral was perfected.").

WhiteHorse has further declared that there is a continuing Event of Default under the Credit Agreement and that, as such, all of Honors Holdings' rights to receive distributions and payments as a result of the Collateral (including as a result of Honors Holdings' membership interests in the Honors Entities) have automatically ceased. (Ex. E, Notice of Default dated April 22, 2024). To the extent

Honors Holdings or any of the Honors Entities receives any distributions or payments while the Event of Default is continuing, WhiteHorse requires that the applicable entity hold such distribution or payment in trust for WhiteHorse. (Ex. B, Security Agr. § 6(b)(ii)).

Judgment Creditors may only receive "the rights of an assignee of the limited liability company interest" under the Georgia charging order statute. O.C.G.A. § 14-11-504(a). Because the Event of Default declared by WhiteHorse ceased Honors Holdings' rights to receive payments or distributions that they were otherwise authorized to receive by virtue of their membership interests in the Honors Entities, there are no currently vested "rights" that the Judgment Creditors can be assigned with respect to Honors Holdings' limited liability company interests. *See Mahalo Investments III, LLC v. First Citizens Bank & Trust Co. Inc.*, 769 S.E.2d 154, 155 (2015) (noting that the purpose of a charging order is to divert "payments to the creditor ***which would otherwise have been made to the member***") (emphasis added). The Application should be denied on this basis alone.

*Second*, the Application should be denied because O.C.G.A. § 14-11-504(a) does not authorize the issuance of a charging order against Honors Holdings' interests in ***foreign*** limited liability companies. Judgment Creditors are seeking an order that would divert distributions and payments owing to Honors Holdings from 96 foreign limited liability companies to the Judgment Creditors to satisfy the

Judgment. O.C.G.A. § 14-11-504(a) only authorizes the issuance of charging orders with respect to any "limited liability company interest of the member . . . ." The Georgia LLC Act defines "limited liability company" to mean "a limited liability company ***formed under this chapter***," O.C.G.A. § 14-11-101(12), whereas "foreign limited liability company" is defined as "a limited liability company formed under the laws of a jurisdiction other than this state," *id.* § 14-11-101(9).

The General Assembly used the defined terms "limited liability company" and "foreign limited liability company" deliberately throughout the Georgia LLC Act. Article 7 deals exclusively with "foreign limited liability companies" and O.C.G.A. § 14-11-701(a) makes clear that "the laws of the jurisdiction under which a foreign limited liability company is organized govern its organization and internal affairs and the liability of its managers, members, and other owners, regardless of whether the foreign limited liability company procured or should have procured a certificate of authority under this chapter." As such, to the extent Judgment Creditors are entitled to a charging order at all, O.C.G.A. § 14-11-504(a) only permits the issuance of a charging order against Honors Holdings' interests in the Honors Entities organized under Georgia law. *See Land USA, LLC v. Georgia Power Co.*, 773 S.E.2d 236, 240 n.10 (Ga. 2015) ("Under the maxim '*expressio unius est exlusio alterius*,' the express mention of one thing, implies the exclusion of another.")

*Finally*, to the extent the Court determines that Judgment Creditors are entitled to a charging order, the Application must still be denied to the extent it seeks an accounting of Honors Holdings' interests and to impose production and reporting obligations on Honors Holdings or any of the Honors Entities. As the Georgia Court of Appeals has explained, the rights that may be conferred on a judgment creditor pursuant to O.C.G.A. § 14-11-504 "are expressly limited and do not include a right to an accounting of company assets," even if the purpose of the requested accounting is to "ensure that distributions are not being made in violation of the charging order . . . ." *Gaslowitz v. Stabilis Fund I, LP*, 770 S.E.2d 245, 250 (2015).

As was the case in *Gaslowitz*, Judgment Creditors have not presented any arguments as to how such ancillary relief would ensure compliance with a charging order, nor any authority that would entitle them to such relief. *Id.* Honors Holdings thus submits that Judgment Creditors' requests for a statement under oath accounting for Honors Holdings' interests in the Honors Entities, the filing of quarterly written reports accounting for Honors Holdings' interests in the Honors Entities, and the filing of organizational documents, should be denied even if the Court determines to issue a charging order.

## CONCLUSION

For the foregoing reasons, Honors Holdings respectfully submits that the Application should be denied.

Respectfully submitted, this 6th day of August, 2024.

**KREVOLIN & HORST, LLC**

*/s/ Halsey G. Knapp, Jr.*
Halsey G. Knapp, Jr.
Georgia Bar No. 425320
1201 West Peachtree Street, NW
3250 One Atlantic Center
Atlanta, GA 30309
(404) 888-9700
(404) 888-9577 (fax)
hknapp@khlawfirm.com
*Counsel for Defendant*

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing has been prepared in accordance with the font type and margin requirements of Local Rule 5.1 of the Northern District of Georgia, using a font type of Times New Roman and a point size of 14.

This 6th day of August, 2024.

*/s/ Halsey G. Knapp, Jr.*
Halsey G. Knapp, Jr.
Georgia Bar No. 425320

**CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2024, I electronically filed the foregoing ***HONORS HOLDINGS, LLC'S RESPONSE AND OBJECTION TO JUDGMENT CREDITORS' APPLICATION FOR ENTRY OF CHARGING ORDER*** with the Clerk of Court using the CM/ECF system, which will automatically send email notification to all counsel of record.

*/s/ Halsey G. Knapp, Jr.*
Halsey G. Knapp, Jr.
Georgia Bar No. 425320